DAVID H. LEROY, ESQ.
1130 East State Street
Boise, Idaho 83712
(208) 342-0000

TARAS KICK
THE KICK LAW FIRM
660 South Figueroa Street, Suite 1800
Los Angeles, CA 90017
(213) 624-1588

Attorneys for Plaintiff
KIM TANNAHILL

U.S. COURTS

99 JAN -6  PM 3: 55

RECD _____
CAMERON S. BURKE
CLERK          IDAHO

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

**CV99 - 0005 - S - LMB**

| | |
|---|---|
| KIM L. TANNAHILL, an individual, | CASE NO. |
| Plaintiff, | **COMPLAINT FOR:** <br> **(1) LIBEL; (2) INVASION OF PRIVACY; (3) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; (4) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** |
| v. | |
| BRUCE WILLIS, an individual; DEMI MOORE, an individual; MADISON MYERS, aka MADISON MYERS-SCHMITT, an individual; NATIONAL ENQUIRER, INC., a Florida corporation, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff Kim Tannahill (hereinafter "Plaintiff") alleges as follows:

## ALLEGATIONS COMMON TO ALL CLAIMS

1.      Kim Tannahill is, and at all times relevant hereto has been, an individual residing in the County of Los Angeles, State of California.

2.      Plaintiff is informed and believes and based thereon alleges that defendant Bruce Willis ("Willis") is, and at all times relevant hereto has been, an internationally known movie star and the husband of Defendant Demi Moore, who maintains addresses in Idaho, California and New York. Defendant Willis has alleged in ongoing litigation with Plaintiff that he is a resident of Idaho.

3.      Plaintiff is informed and believes and based thereon alleges that defendant Demi Moore ("Moore") is, and at all times relevant hereto has been, an internationally known movie star

JMH/alp/507-3/idaho\pldg\complaint.wpd

1 and the wife of Defendant Bruce Willis, who maintains addresses in Idaho, California and New York

2 Defendant Moore has alleged in ongoing litigation with Plaintiff that she is a resident of Idaho.

3     4.     Plaintiff is informed and believes and based thereon alleges that defendant Madison

4 Myers, aka Madison Myers-Schmitt, is, and at all times relevant hereto has been, a resident of the

5 State of Idaho.

6     5.     Plaintiff is informed and believes and based thereon alleges that Defendant National

7 Enquirer, Inc. ("National Enquirer"), is, and at all times relevant hereto has been, a corporation

8 organized under the laws of the State of Florida with a principal place of business in Lantana, Florida.

9 Defendant National Enquirer is the publisher and disseminator of the weekly magazine known as *The*

10 *New National Enquirer* ("the Tabloid").

11     6.     Plaintiff is informed and believes and based thereon alleges that the Tabloid has a wide

12 circulation, and is read and seen by a great number of people in the geographic areas in which the

13 Tabloid is published, circulated, distributed, subscribed to and sold, including, but not limited to

14 throughout the State of Idaho, throughout the United States, and throughout the world.

15     7.     This Court has original jurisdiction under 28 U.S.C. Section 1332 in that this is a civil

16 action between citizens of different states in which the matter in controversy, exclusive of costs and

17 interest, exceeds $75,000.

18     8.     Venue is proper in this District under 28 U.S.C. Section 1391(a)(1) in that all

19 Defendants reside or do business in this District for purposes of federal venue.

20     9.     Plaintiff is informed and believes and based thereon alleges that Defendants, and each

21 of them, were the agents, employees, partners, joint venturers, co-conspirators, owners, principals

22 and employers of the remaining Defendants, and each of them, and are, at all times herein mentioned

23 were, acting within the course and scope of that agency, partnership, employment, conspiracy,

24 ownership or joint venture. Plaintiff is further informed and believes and based thereon alleges that

25 the acts and omissions herein alleged of each such Defendants were known to, authorized by and/or

26 ratified by the other Defendants, and each of them.

27

28                     **THE NATIONAL ENQUIRER ARTICLE**

1       10.    In the February 24, 1998, edition of *The New National Enquirer*, an article was

2  published with the lead headline on the cover page entitled "Demi, Bruce and the Sex-Crazed

3  Nanny...The Untold Story" ("the February article"). A picture of Plaintiff was prominently displayed

4  on the front page. A true and correct copy of the February article, including the headlines, captions

5  and photographs is attached hereto as Exhibit "A" and incorporated by this reference though fully set

6  forth herein. Among other things, as alleged herein, the February article contains false, fabricated and

7  defamatory statements about Plaintiff in a sensationalized and malicious effort to profit from the

8  publication of false and fabricated information concerning Plaintiff. Among other things, as further

9  alleged herein, the February article contains the following false and defamatory statements concerning

10  Plaintiff:

11       (a)    Headline: "Sex-Crazed Nanny"

12       (b)    "She tried to bed Bruce"

13       (c)    "She was obsessed with Demi"

14       (d)    "She had $100,000 make-over & Demi paid for it"

15       (e)    "'She became my worst nightmare'"

16       (f)    "Little did they know she'd turn out to be the nanny from hell---who was hell-bent on

17            seducing Bruce"

18       (g)    "Demi took Kim under her wing and transformed her from a shy, overweight young

19            woman with acne-scarred skin into a svelte stunner"

20       (h)    "She repaid that kindness by flirting shamelessly with Bruce"

21       (i)    "'The truth is, Kim was the nanny from hell'"

22       (j)    "'But Kim flirted with Bruce---and with everyone else'"

23       (k)    "Demi caught her 'sashaying around in front of Bruce in a little black catsuit'"

24       (l)    "'Every movie set Bruce and Demi worked on, Kim seemed to have a boyfriend. She

25            was very flirtatious'"

26       (m)    "'She dressed very provocatively in this tight little black one-piece jumpsuit. It was

27            see-through and showed everything'"

28       (n)    "[B]latantly coming on to Bruce, making suggestive comments filled with sexual

1       innuendo"

2   (o)   "She [Plaintiff] was definitely trying to lure him [defendant Willis] to bed"

3   (p)   "Kim also became dangerously derelict in her duties as a nanny"

4   (q)   "She was nowhere in sight when the eldest Willis daughter, Rumer, now 9, fell into a

5       raging river and almost drowned, or when the youngest daughter Tallulah, 4, fell and

6       fractured her arm."

7   (r)   "'Kim wasn't around, either, when Tallulah fell and fractured her arm. That's

8       unacceptable.'"

9   (s)   "'The only person I knew for a fact was taking drugs, prescribed or otherwise, on a

10      regular basis was Kim herself.'"

11   (t)   "'When I found and hired Kim, she had a bad case of acne on her face, an oily scalp

12      and was at least sixty pounds overweight.'"

13   (u)   "Kim's make over by top specialists---which included braces and a nose job---cost

14      Demi more than $100,000"

15   (v)   "As time went on, 'Kim became obsessed with Demi,' said Madison. 'She wanted to

16      look like her, dress like her and be like her '"

17   (w)   "'It was scary. It was like that movie, *The Hand That Rocks The Cradle*. She really

18      became like the nanny in that movie---the nanny from hell.'"

19   (x)   "She told me, 'I can act as well as Demi and I'm more beautiful. She just happened to

20      get a lucky break. If I studied acting, with a lucky break I could have everything that

21      Demi has.'"

22   (y)   "'But as time went on, she became bitter and resentful of her position'"

23   (z)   "'Kim thought that the job was beneath her. She got caught up in the whole

24      Hollywood thing.'"

25   (aa)   "'She always liked to give people the impression that the Willises were some sort of

26      slave drivers, making her work 24 hours a day, seven days a week.'"

27   (bb)   "But Demi told her friend: 'Kim became my worst nightmare. Now I just want this

28      nightmare to end.'"

1       11.    Plaintiff is informed and believes and based thereon alleges that, Defendants and each

2 of them, conspired to publish the February Tabloid article so as to punish Plaintiff for requesting that

3 Defendant Moore and Defendant Willis pay her in compliance with federal wage laws. Plaintiff had

4 demanded that Defendants Moore and Willis pay her in compliance with such laws and when they

5 refused, she filed a lawsuit against them seeking to be paid in compliance with United States wage

6 laws. Rather than comply with these wage laws, Defendant Moore commenced a campaign of

7 harassing and intimidating Plaintiff, including conspiring with the other Defendants, and each of them,

8 to "punish" Plaintiff by publishing the front page story.

9       12.    Plaintiff is further informed and believes and based thereon alleges that certain photos

10 contained in the article, were Defendants Moore's and Willis' personal photographs, and were given

11 to the National Enquirer by them or by defendant Madison Myers, at Defendants Moore's and Willis'

12 request or permission.

13      13.    Plaintiff is further informed and believes and based thereon alleges that,

14 notwithstanding the fact that Defendant National Enquirer was informed by various individuals it

15 interviewed, that the story was false, Defendants, and each of them, nevertheless determined to

16 publish the February article containing knowingly false factual assertions, including those specified

17 above.

18      14.    Plaintiff is informed and believes and based thereon alleges that the conduct of

19 Defendants as alleged herein was undertaken in a despicable, fraudulent and malicious effort to profit

20 from the outrageous publication of the salacious, fabricated story of and concerning Plaintiff, and to

21 further influence public opinion regarding marital problems which would later come to light between

22 Defendants Moore and Willis, as well as to "punish" the Plaintiff for filing a labor related lawsuit

23 against them.

24      15.    Plaintiff is informed and believes and based thereon alleges that Defendant Moore and

25 Willis' personal agents and or employees, including attorneys reviewed the February article before it

26 was published, and also spoke with Defendant Madison Myers about what statements she was to

27 provide to defendant National Enquirer. Plaintiff is further informed and believes and based thereon

28 alleges that Defendants Moore and Willis' personal agents and/or employees, including attorneys,

1  directly contacted the National Enquirer, and, with their knowledge and consent, orchestrated and

2  caused the February article to be published.

### FIRST CLAIM FOR LIBEL

### (AGAINST ALL DEFENDANTS)

5      16.     Plaintiff repeats, realleges, adopts and incorporates each and every allegation

6  contained in paragraphs one through fifteen inclusive, as though fully set forth herein.

7      17.     Defendants printed, disseminated, published and circulated, or caused to be printed,

8  published, disseminated and circulated in Idaho, and elsewhere throughout the United States and the

9  world, the February article which is libelous *per se* to Plaintiff.

10      18.     Persons who read the February article reasonably understood the references therein to

11  pertain and refer to Plaintiff, her personal life and her private life, and her performance as a nanny to

12  Defendants Willis' and Moore's children.

13      19.     As alleged above, the February article contained fabricated, false, malicious and

14  defamatory statements of fact, concerning Plaintiff, which Defendant National Enquirer knew were

15  false and which were created by Defendants Moore and Willis, themselves, and through their agents

16  and/or employees, including attorneys and defendant Myers acting on their behalf, to control the

17  public opinion regarding ongoing litigation between Plaintiff, on the one hand, and Defendants Willis

18  and Moore, on the other and to retaliate against Plaintiff for seeking to have Defendants Willis and

19  Moore pay her in compliance with United States wage laws..

20      20.     The February article was intended by Defendants, and each of them, to be read, and

21  was read, by purchasers of the Tabloid in the State of Idaho, and throughout the United States and

22  the world, at the time that the Tabloid was printed, disseminated and circulated.  Plaintiff is informed

23  and believes and based thereon alleges, that Defendants, and each of them, intended that persons near

24  newsstands and checkout counters in supermarkets and other locations where the Tabloid was being

25  sold would see the cover with the pictures of Plaintiff and the headlines referring to Plaintiff as a "sex-

26  crazed nanny", as stated above.  Plaintiff is further informed and believes and based thereon alleges

27  that during the time that the February article was on the newsstands and otherwise available for

28  purchase or subscription, millions of people, in addition to those who purchased the Tabloid, saw the

1  cover and/or headlines of the February article on newsstands and checkout counters and other places
2  where the Tabloid was for sale.

3      21.    The February article is libelous on its face and clearly exposes Plaintiff to hatred,
4  contempt, ridicule and obloquy, and/or causes Plaintiff to be shunned or avoided, and has a tendency
5  to injure Plaintiff in her chosen occupation as a nanny.  Among other things, the February article
6  depicts Plaintiff as sex-crazed, derelict, vengeful and drug-ingesting in her personal and professional
7  life.  All of these depictions and factual characterizations were and are false and were orchestrated in
8  a conspiracy by Defendants herein.

9      22.    Plaintiff is informed and believes and based thereon alleges that Defendants, and each
10 of them, intentionally portrayed Plaintiff in this manner knowing that the depiction was false, or
11 without any reasonable grounds for believing it to be true.

12     23.    The defamatory statements in the February article were unprivileged, and were
13 intended by Defendants, and each of them, to directly injure Plaintiff with respect to her reputation,
14 character, profession, trade and business, in her chosen profession as a nanny.  Plaintiff is informed
15 and believes and based thereon alleges that Defendants knew, or recklessly disregarded the fact, that
16 the defamatory statements in the February article would damage the reputation and standing of
17 Plaintiff in her community, and would cause Plaintiff to be shunned by future employment.

18     24.    The February article is plainly and reasonably susceptible of a defamatory meaning on
19 its face and the false and defamatory statements have a direct tendency to injure Plaintiff with respect
20 to her reputation, standing, character and business.  Plaintiff is informed and believes and based
21 thereon alleges that the defamatory statements in the February article were written and published with
22 actual malice, with the knowledge that they were false or with a reckless disregard for the truth.
23 Moreover, statements contained in the February article were falsely attributed to an "insider," from
24 which characterization Plaintiff is informed and believes and based thereon alleges that Defendants,
25 and each of them, had absolutely no factual basis whatsoever for believing the truth of the defamatory
26 statements concerning Plaintiff.

27     25.    As a direct and proximate result of the above described conduct by Defendants, and
28 each of them, Plaintiff has suffered general and special damages in amounts not presently known,

1   including damages to Plaintiff's reputation and standing in the community, shame, mortification, hurt
2   feelings, embarrassment, humiliation, damage to peace of mind and severe emotional and physical
3   distress.  Although the full nature, extent and amount of these damages is currently unknown, this
4   complaint will be amended at or before trial to insert such information as deemed necessary by this
5   Court.

6       26.    As a further direct and proximate result of the above described conduct by
7   Defendants, and each of them, Plaintiff has suffered special damages to her reputation in her
8   profession as a nanny, resulting in loss of earnings and profits in an amount not yet fully ascertainable
9   and to be proved at trial.

10      27.    Plaintiff is informed and believes and based thereon alleges that the aforesaid acts of
11  Defendants, and each of them, were done intentionally or with a conscious disregard of Plaintiff's
12  rights, and with intent to vex, injure or annoy Plaintiff, such as to constitute oppression, fraud or
13  malice, and thus entitle Plaintiff to exemplary and punitive damages in an amount appropriate to
14  punish or set an example of Defendants, and each of them, and deter such conduct in the future,
15  which amount will be proved at trial.  Plaintiff is further informed and believes and based thereon
16  alleges, that the officers, directors and/or managing agents of defendant National Enquirer, and each
17  of them, authorized, directed and/or ratified the wrongful acts of Defendants, as alleged herein.

18                  **SECOND CLAIM FOR INVASION OF PRIVACY**
19                          **(AGAINST ALL DEFENDANTS)**

20      28.    Plaintiff repeats, realleges, adopts and incorporates each and every allegation
21  contained in paragraphs one through fifteen and paragraphs sixteen through twenty-seven inclusive as
22  though fully set forth herein.

23      29.    As is alleged herein, Defendants, and each of them, made false statements to third
24  parties and published false statements of and concerning Plaintiff.  Specifically, Defendants Moore
25  and Willis engaged in a worldwide media campaign to disparage and attack Plaintiff because Plaintiff
26  sought to have Defendants Willis and Moore pay her in compliance with United States wage laws and
27  filed litigation thereon.  Plaintiff is informed and believes and based thereon alleges that to further this
28  worldwide media campaign, Defendants, and each of them, conspired to print, publish, disseminate

1    and circulate the false depictions and characterizations contained in the February article.

2        30.    Plaintiff is informed and believes and based thereon alleges that certain of the

3    photographs contained in the February article were the Willises' personal photographs, and were

4    provided to the National Enquirer by Defendant Moore, Defendant Willis or their agents or

5    employees  To the extent that the trier of fact finds that these statements are not defamatory, Plaintiff

6    is informed and believes and based thereon alleges, that Defendants intended them to depict Plaintiff

7    in a false, fictionalized and sensationalized light in order to benefit themselves through promoting and

8    exploiting the February article.

9        31.    As a direct and proximate result of the aforesaid false and fictionalized statements,

10    Defendants have placed Plaintiff in a false light and further intended to place her in a false light that is

11    highly offensive to Plaintiff, as it would be to any reasonable person.

12        32.    Plaintiff is informed and believes and based thereon alleges that the false light in which

13    Defendants have placed her based on the aforesaid false statements contained in the February article

14    would be and is highly offensive to any reasonable person.

15        33.    Plaintiff is informed and believes and based thereon alleges that Defendants, and each

16    of them, had knowledge, or acted in reckless disregard, of the falsity of the statements made

17    concerning Plaintiff in the February article and intended to further place Plaintiff in a false light by

18    publication, dissemination and repetition of the false and defamatory  statements of and concerning

19    Plaintiff and through the continued distribution of the February article, compounded by Defendants,

20    and each of them, going forward with publication of the February article without any justification.

21        34.    As a direct and proximate result of the above described conduct by Defendants, and

22    each of them, Plaintiff has suffered general and special damages in amounts not presently known, but

23    to be proved at trial, including damages to Plaintiff's reputation and standing in the community,

24    shame, mortification, hurt feelings, embarrassment, humiliation, damage to peace of mind and severe

25    emotional and physical distress.  Although the full nature, extent and amount of these damages is

26    currently unknown, this complaint will be amended at or before trial to insert such information as

27    deemed necessary by this Court.

28        35.    As a further direct and proximate result of the above described conduct by

JMH/alp/507-3/idaho\pldg\complaint.wpd                    9

1   Defendants, and each of them, Plaintiff has suffered special damages to her reputation in her

2   profession as a nanny, resulting in loss of earnings and profits in an amount not yet fully ascertainable.

3          36.      Plaintiff is informed and believes and based thereon alleges, that the aforesaid acts of

4   the Defendants, and each of them, were done intentionally or with a conscious disregard of Plaintiff's

5   rights, and with intent to vex, injure or annoy Plaintiff, such as to constitute oppression, fraud or

6   malice thus entitling Plaintiff to exemplary and punitive damages in an amount appropriate to punish

7   or set an example of Defendants, and each of them, and to deter such conduct in the future, which

8   will be proved at trial. Plaintiff is further informed and believes and based thereon alleges, that the

9   officers, directors and/or managing agents of defendant National Enquirer, and each of them,

10  authorized, directed and/or ratified the wrongful acts of Defendants, as alleged herein.

11          **THIRD CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

12                              **(AGAINST ALL DEFENDANTS)**

13          37.      Plaintiff repeats, realleges, adopts and incorporates each and every allegation

14  contained in paragraphs one through fifteen, paragraphs sixteen through twenty-seven and paragraphs

15  twenty-eight through thirty-six, inclusive as though fully set forth herein.

16          38       Defendants' conduct as alleged herein was extreme, outrageous and would be so

17  considered by the general public and was undertaken in an attempt to cause Plaintiff to suffer severe

18  emotional and mental anxiety, distress and pain, or with a conscious disregard of that consequence or

19  likelihood. In addition, the conduct was such that Defendants knew, or consciously disregarded the

20  likelihood that, Plaintiff would be caused severe emotional distress and upset. Defendants' conduct

21  was intentional and malicious for the express purpose of, or consciously disregarding the likelihood

22  of, causing Plaintiff to suffer humiliation, mental anguish and emotional and physical pain and distress

23          39.      As a direct and proximate result of the aforementioned acts by Defendants, and each

24  of them, Plaintiff has been damaged in an amount not presently known, but to be proved at trial and

25  Plaintiff will seek leave of court to amend this complaint when the full amount of damages has been

26  ascertained.

27          40.      Plaintiff is informed and believes and based thereon alleges, that the aforesaid acts of

28  Defendants, and each of them, were done intentionally or with a conscious disregard of Plaintiff's

1  rights, and with an intent to vex, injure or annoy Plaintiff, such as to constitute oppression, fraud or

2  malice, thus entitling Plaintiff to exemplary and punitive damages in an amount appropriate to punish

3  or set an example of Defendants, and each of them, and to deter such conduct in the future, which

4  amount will be proved at trial.  Plaintiff is further informed and believes and based thereon alleges,

5  that the officers, directors and/or managing agents of defendant National Enquirer, and each of them,

6  authorized, directed and/or ratified the wrongful acts of Defendants, as alleged herein.

7                    **FOURTH CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

8                                                 **(AGAINST ALL DEFENDANTS)**

9           41.     Plaintiff repeats, realleges, adopts and incorporates each and every allegation

10  contained in paragraphs one through fifteen, inclusive as though fully set forth herein.

11          42.     In the event that Defendants' conduct inflicting emotional distress, as alleged above, is

12  not deemed intentional, said misconduct was undertaken negligently, and without any reasonable

13  basis for a belief in the truth of the defamatory statements made in the February article or any exercise

14  of due care as to determining the truth or falsity of the defamatory statements made in the February

15  article.

16          43.     As a direct and proximate result of the aforesaid acts of Defendants, and each of them,

17  Plaintiff has suffered general and special damages, including, but not limited to, emotional distress in

18  an amount in excess of $75,000, the exact amount to be proved at trial.  Although the full nature,

19  extent and amount of these damages are currently unknown, this complaint will be amended at or

20  before trial to insert such information if such amendment is necessary by the Court.

21                                                       **PRAYER**

22          WHEREFORE Plaintiff Kim Tannahill prays for judgment against Defendants, and each of

23  them, as follows:

24  **AS TO THE FIRST, SECOND AND THIRD CLAIMS:**

25          1.      For general and special damages against Defendants, and each of them, jointly and

26  severally, including damages to Plaintiff's reputation and standing in the community, shame,

27  mortification, hurt feelings, embarrassment, humiliation, damage to peace of mind and severe

28  emotional and physical distress and damage for loss of business and inability to work in her chosen

1    profession of a nanny, according to proof at the time of trial, in an amount of not less than
2    $5,000,000, together with interest thereon at maximum legal rate;

3         2.     For special damages for damage to her reputation in her profession as a nanny,
4    resulting in loss of earnings and profits in an amount not yet fully ascertainable;

5         3.     For exemplary and punitive damages against Defendants, and each of them, jointly and
6    severally, in an amount sufficient to punish and deter Defendants;

7    **AS TO THE FOURTH CLAIM:**

8         4.     For general and special damages against Defendants, and each of them, jointly and
9    severally, according to proof at the time of trial, in an amount of not less than $5,000,000, together
10   with interest thereon at the maximum legal rate;

11        5.     For exemplary and punitive damages against Defendants, and each of them, jointly and
12   severally, in an amount sufficient to punish and deter Defendants;

13   **AS TO ALL CAUSES OF ACTION:**

14        6.     For cost of suit and reasonable attorney's fees incurred herein by Plaintiff as may be
15   proved by law;

16        7.     For interest as may be provided by law;

17        8.     For such other and further relief as the Court deems just and appropriate.

18
19   DATED This ____ day of January, 1999.
20
21   BY_____
22        David H. Leroy, Attorney for Plaintiff
          Kim Tannahill

23   **JURY DEMAND**

24   Jury trial is hereby demanded.
25
26   By:_____
          David Leroy
27        Attorney for Plaintiff,
          KIM TANNAHILL
28

JMH/alp/507-3/idaho\pldg\complaint.wpd                    12



EXHIBIT A

# DEMI, BRUCE AND
# SEX-CRAZED NANN



"SHE BECAME MY WORST NIGHTMARE," a shocked Demi says of their ex-nanny Kim Tannahill, who has filed a scandalous lawsuit against her and Bruce.

*By MICHAEL GLYNN and LARRY HALEY*

● She tried to bed Bruce
● She was obsessed with Demi
● She had $100,000 make-over — & Demi paid for it!

**W**hen Demi Moore and Bruce Willis hired Kim Tannahill to watch over their three daughters, little did they know she'd turn out to be the nanny from hell — who was hell-bent on seducing Bruce!

That's what insiders are saying in the wake of a scandalous lawsuit Kim filed against the two film stars.

In the suit filed in Los Angeles on February 2, Tannahill charged the Willises with underpaying and overworking her and subjecting her to threats and intimidation.

When Kim approached The ENQUIRER with her story about mistreatment

**EX-EMPLOYEE** Madison Myers calls the allegations against Demi and Bruce "horrendous."



by Demi and Bruce, we checked out her claims — and found an entirely different story.

Associates who worked

alongside Kim in the Willis household told The ENQUIRER that Demi took Kim under her wing and transformed her from

a shy, overweight young woman with acne-scarred skin into a svelte stunner.

And she repaid that kindness by flirting shamelessly with Bruce.

"I'm shocked and mortified that Kim would make these horrendous allegations!" Madison Myers, a former Willis nanny who helped hire the then-27-year-old in 1994, told The ENQUIRER in an exclusive interview.

"The truth is, Kim was the nanny from hell!

"Bruce and Demi were so good to her. They showered us with gifts — clothes, vacations, jewelry. They gave each of us a pair of 1/2-carat diamond earrings for our birthdays.

"But Kim flirted with



BRUCE AND DEMI with daughter Rumer and nanny Kim Tannahill (center) on vacation in Cavallo, a small island off the coast of Corsica in the Mediterranean in 1995.



NANNY FROM HELL KIM TANNAHILL: Demi caught her "seshaying around in front of Bruce in a little black cat suit."

Bruce — and with everyone else.

"She would hug and touch some of the other male employees who worked for the Willises. I didn't feel that was right.

"Every movie set Bruce and Demi worked on, Kim



THE
UNTOLD
STORY

THE

VY

**Topless on the beach**

seemed to have a boyfriend. She was very flirtatious.

"She'd dress very provocatively in this tight little black one-piece jumpsuit. It was see-through and showed everything!"

One time Demi walked into a room at the couple's home in Idaho and found Kim "sashaying about in her little black 'cat suit' and blatantly coming on to Bruce, making suggestive comments filled with sexual innuendo," said another employee. "She was definitely trying to lure him to bed!

"When Demi saw and heard what Kim was doing, she couldn't believe it.

"Kim told Demi that she

Lt KiM caught ound o lit

h every

ug and e other is who llises, s right. st Bruce on, Kim

Continued on Page 20▶

HOT-TO-TROT NANNY Kim Tunnahill hangs out with Bruce and his daughter Tallulah during a fun-filled vacation with the Willises. An angry Demi once told her she should pay less attention to Bruce — and more to the kids.

NATIONAL ENQUIRER

25

# She was like that nanny in 'The Hand That Rocks the Cradle'

**DEMI: Bad vibes.**

(Continued from Centerfold)

had misunderstood the situation, but Demi replied that she should start paying more attention to her kids than her hubby."

Madison continued: "I don't know why they put up with Kim, but they loved her and the kids loved her. They accepted her behavior."

Kim also became dangerously derelict in her duties as a nanny, say sources. She was nowhere in sight when the eldest Willis daughter Rumer, now 9, fell into a raging river and almost drowned, or when the youngest daughter Tallulah, 4, fell and fractured her arm.

"Rumer was playing with a friend on the Willis property when she fell in," said the employee.

"Fortunately, her friend pulled her out. She was scared to death. And she could have drowned.

"Kim wasn't around, either, when Tallulah fell and fractured her arm. That's unacceptable!"

Meanwhile, Madison said, Kim was spreading false rumors claiming Demi was abusing prescription drugs — a charge she repeated in her lawsuit.

"The only person I knew for a fact was taking drugs, prescribed or otherwise, on a regular basis was Kim herself.

"She had been taking fenphen for a while to lose weight.

"And she had liposuction, too, which Demi and Bruce paid for.

"When I found and hired Kim, she had a bad case of acne on her face, an oily scalp and was at least 60 pounds overweight.

"Demi let Kim use her fitness trainers and see any of her doctors, free of charge. She saw nutritionists, dermatologists, hair and scalp specialists, you name it.

"If Demi was working out, Kim wanted to work out with her — even if that



**MAY, 1994**

The transformation begins . . .



**JUNE, 1995**

**LAST FALL**

*Demi's nightmare*

NANNY Kim Tannahill was shy and overweight (top) when she was hired. But with Demi's help, a year later — while enjoying a brunch with Madison Myers (bottom left) — she was a svelte stunner, a figure she has apparently managed to keep (above).

meant that I or one of the other staff members had to do her job by looking after the girls."

Kim's makeover by top specialists — which included braces and a nose job — cost Demi more than $100,000!

As time went on "Kim became obsessed with Demi," said Madison. "She wanted to look like her, dress like her and be her.

"Kim even went so far as

to cut her hair like Demi.

"It was scary. It was like that movie, 'The Hand That Rocks the Cradle.' She really became like the nanny in that movie — the nanny from hell!"

Said a friend of the actress: "Kim wanted Demi's celebrity spotlight.

"She told me, 'I can act as well as Demi and I'm more beautiful. She just happened to get a lucky break. If I studied acting, with a

lucky break I could have everything Demi has.'"

Although Kim charges in her lawsuit that she was mistreated by Bruce and Demi, Anthony Spiro — the couple's limo driver in New York for the last six years — told The ENQUIRER "I couldn't have asked for better people to work for.

"They always treated me very well. They were a pleasure to drive.

"But I can't say the same

for their nanny, Kim.

"When she first went to work for Bruce and Demi, she was in awe of the whole situation.

"But as time went on, she became bitter and resentful of her position.

"Kim thought that the job was beneath her. She got caught up in the whole Hollywood thing.

"Kim was meeting with all these producers and people in the industry and she wanted to be one of them.

"She always liked to give people the impression that the Willises were some sort of slave drivers, making her work 24 hours a day, seven days a week.

"She claimed that they never gave her any free time.

"But that simply wasn't the case.

"They'd give Kim the afternoon or evening off — and give her the car as well! And they always tried to give her at least a day or two during the week so she could do something on her own.

"And as for Kim's allegations that Demi was an inattentive mom, they couldn't be further from the truth. She was with her three kids whenever possible."

Demi and Bruce eventually got fed up with Kim and fired her last year.

And after Kim filed her suit demanding a huge payoff, Madison told The ENQUIRER she decided to speak up because "I just couldn't stand by and watch Kim tear them down, especially out of greed!"

The couple have filed a suit of their own, accusing Kim of lying and stealing money.

When contacted by The ENQUIRER, Demi, Bruce and their lawyer refused to discuss Kim or Kim's lawsuit.

But Demi told her friend: "Kim became my worst nightmare.

"Now I just want this nightmare to end."

## 'I can act as well as Demi & I'm more beautiful . . . with a lucky break I could have everything Demi has'

— ex-nanny Kim Tannahill to a friend of the actress